**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| THE GEORGE LEON FAMILY TRUST, Individually and On Behalf of All Others Similarly Situated, | )<br>)<br>)<br>) |
| Plaintiff, | ) Case No. _____ |
| v. | )<br>) JURY TRIAL DEMANDED |
| CHICAGO BRIDGE & IRON COMPANY N.V., L. RICHARD FLURY, FORBES I.J. ALEXANDER, JAMES R. BOLCH, DEBORAH M. FRETZ, W. CRAIG KISSEL, LARRY D. MCVAY, JAMES H. MILLER, MARSHA C. WILLIAMS, MCDERMOTT INTERNATIONAL, INC., MCDERMOTT TECHNOLOGY, B.V., MCDERMOTT TECHNOLOGY (AMERICAS), LLC, MCDERMOTT TECHNOLOGY (US), LLC, COMET I B.V., COMET II B.V., CB&I OIL & GAS EUROPE B.V., CB&I GROUP UK HOLDINGS, CB&I NEDERLAND B.V., and THE SHAW GROUP, INC. | ) CLASS ACTION<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by its undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to itself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1.  This action stems from a proposed transaction announced on December 18, 2017 (the "Proposed Transaction"), pursuant to which Chicago Bridge & Iron Company N.V. ("CB&I" or the "Company") and its affiliates will be acquired by McDermott International, Inc. ("McDermott") and its affiliates.

2. On December 18, 2017, CB&I's Board of Directors (the "Board" or "Individual Defendants") caused the Company and its affiliates—Comet I B.V., Comet II B.V., CB&I Oil & Gas Europe B.V., CB&I Group UK Holdings, CB&I Nederland B.V., and The Shaw Group, Inc. (collectively with CB&I, "Chicago Bridge")—to enter into a business combination agreement (the "Merger Agreement") with McDermott and its affiliates—McDermott Technology, B.V. ("McDermott Bidco"), McDermott Technology (Americas), LLC, and McDermott Technology (US), LLC. (collectively with McDermott, "McDermott International").

3. Pursuant to the terms of the Merger Agreement, McDermott International and Chicago Bridge will combine their businesses by a series of transactions, beginning with McDermott Bidco launching an offer to exchange any and all of CB&I's common stock for 2.47221 shares of McDermott common stock, or, if McDermott effects a planned 3-to-1 reverse stock split (the "Reverse Stock Split") prior to the closing of the Proposed Transaction, 0.82407 shares of McDermott common stock.  Upon closing of the Proposed Transaction, McDermott stockholders will own approximately 53% of the outstanding shares of McDermott common stock and CB&I shareholders will own approximately 47% of the outstanding shares of McDermott common stock.

4. On January 24, 2018, defendants filed a Form S-4 Registration Statement (the "Registration Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

5. The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

**JURISDICTION AND VENUE**

6.     This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

7.     This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.     Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

**PARTIES**

9.     Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of CB&I common stock.

10.     Defendant CB&I is a company organized under the laws of the Netherlands and maintains its administrative headquarters at One CB&I Plaza, 2103 Research Forest Drive, The Woodlands, Texas 77380.  CB&I's common stock is traded on the NYSE under the ticker symbol "CBI."  CB&I is a party to the Merger Agreement.

11.     Defendant Comet I B.V. is a company incorporated under the laws of the Netherlands, a wholly owned subsidiary of CB&I, and a party to the Merger Agreement.

12.     Defendant Comet II B.V. is a company incorporated under the laws of the Netherlands, a wholly owned subsidiary of Comet I B.V., and a party to the Merger Agreement.

13.     Defendant CB&I Oil & Gas Europe B.V. is a company incorporated under the laws of the Netherlands, an indirect, wholly owned subsidiary of CB&I, and a party to the

3

Merger Agreement.

14. Defendant CB&I Group UK Holdings is a private limited company incorporated in and registered in England and Wales, an indirect, wholly owned subsidiary of CB&I, and a party to the Merger Agreement.

15. Defendant CB&I Nederland B.V. is a company incorporated under the laws of the Netherlands, an indirect, wholly owned subsidiary of CB&I, and a party to the Merger Agreement.

16. Defendant The Shaw Group, Inc. is a Louisiana corporation, an indirect, wholly owned subsidiary of CB&I, and a party to the Merger Agreement.

17. Defendant L. Richard Flury ("Flury") has served as Non-Executive Chairman of the Board since 2010, and as a director of CB&I since May 2003.

18. Defendant Forbes I.J. Alexander ("Alexander") has served as a director of CB&I since 2017.

19. Defendant James R. Bolch ("Bolch") has served as a director of CB&I since 2012.

20. Defendant Deborah M. Fretz ("Fretz") has served as a director of CB&I since 2013.

21. Defendant W. Craig Kissel ("Kissel") has served as a director of CB&I since 2009.

22. Defendant Larry D. McVay ("McVay") has served as a director of CB&I since 2008.

23. Defendant James H. Miller ("Miller") has served as a director of CB&I since 2014.

24. Defendant Marsha C. Williams ("Williams") has served as a director of CB&I since 1997.

25. The defendants identified in paragraphs 17 through 24 are collectively referred to herein as the "Individual Defendants."

26. Defendant McDermott is a corporation incorporated under the laws of the Republic of Panama and a party to the Merger Agreement.

27. Defendant McDermott Bidco is a company incorporated under the laws of the Netherlands, a wholly owned subsidiary of McDermott, and a party to the Merger Agreement.

28. Defendant McDermott Technology (Americas), LLC is a Delaware limited liability company, a direct wholly owned subsidiary of McDermott, and a party to the Merger Agreement.

29. Defendant McDermott Technology (US), LLC is a Delaware limited liability company, a direct wholly owned subsidiary of McDermott, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

30. Plaintiff brings this action as a class action on behalf of itself and the other public stockholders of CB&I (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

31. This action is properly maintainable as a class action.

32. The Class is so numerous that joinder of all members is impracticable. As of December 15, 2017, there were approximately 101,418,664 shares of CB&I common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

33. Questions of law and fact are common to the Class, including, among others: (i) whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

34. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

35. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

36. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

**SUBSTANTIVE ALLEGATIONS**

*Background of the Company and the Proposed Transaction*

37. Founded in 1889, CB&I provides a wide range of services, including conceptual design, technology, engineering, procurement, fabrication, modularization, construction, commissioning, maintenance, program management, and environmental services to customers in

the energy infrastructure market throughout the world, and is a provider of diversified government services.  With more than a century of experience and approximately 42,100 employees worldwide, CB&I capitalizes on its global expertise and local knowledge to safely and reliably deliver projects virtually anywhere.  At a given point in time, CB&I has active projects in process in more than 70 countries.

38.   On December 31, 2015, CB&I completed the sale of its nuclear power construction business, previously included within its Engineering & Construction operating group, to Westinghouse Electric Company LLC for approximately $161.0 million.

39.   The Company currently operates in four groups, which represent CB&I's reportable segments.  Through its Engineering & Construction group, CB&I provides engineering, procurement, and construction services for major energy infrastructure facilities. Projects for this operating group include upstream and downstream process facilities for the oil and gas industry, such as refinery process units and petrochemical facilities, as well as liquefied natural gas ("LNG") liquefaction and regasification terminals, and fossil electric generating plants for the power generation industry.

40.   CB&I's Fabrication Services segment provides fabrication and erection of steel plate structures; fabrication of piping systems and process modules; manufacturing and distribution of pipe and fittings; and engineered products for the oil and gas, petrochemical, power generation, water and wastewater, mining and mineral processing industries.  Projects for this operating group include above ground storage tanks, LNG and low temperature tanks, field erected pressure vessels and spheres, elevated water storage tanks and other specialty structures, process modules, fabrication of piping and structural steel, induction bending and module prefabrication and assembly.

41.     The Company's Technology segment provides proprietary process technology licenses and associated engineering services and catalysts, primarily for the petrochemical and refining industries, and offers process planning and project development services and a comprehensive program of aftermarket support.

42.     Finally, CB&I's Capital Services segment provides comprehensive and integrated maintenance services, environmental engineering and remediation, construction services, program management, and disaster response and recovery for private-sector customers and governments.

43.     On December 18, 2017, the Individual Defendants caused Chicago Bridge to enter into the Merger Agreement with McDermott International, pursuant to which McDermott International and Chicago Bridge will combine their businesses by a series of transactions, beginning with McDermott Bidco launching an offer to exchange any and all of CB&I's common stock for 2.47221 shares of McDermott common stock, or, if McDermott effects the 3-to-1 Reverse Stock Split prior to the closing of the Proposed Transaction, 0.82407 shares of McDermott common stock.

44.     Upon closing of the Proposed Transaction, McDermott stockholders will own approximately 53% of the outstanding shares of McDermott common stock and CB&I shareholders will own approximately 47% of the outstanding shares of McDermott common stock.

*The Registration Statement Omits Material Information, Rendering It False and Misleading*

45.     On January 24, 2018, defendants filed the Registration Statement with the SEC in connection with the Proposed Transaction.

46.     The Registration Statement omits material information with respect to the

Proposed Transaction, which renders the Registration Statement false and misleading.

47. The Registration Statement omits material information regarding CB&I's financial projections, McDermott's financial projections, and the valuation analyses performed by the Board's financial advisor in connection with the Proposed Transaction, Centerview Partners LLC ("Centerview").

48. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

49. Although the Registration Statement provides stockholders with certain financial projections of CB&I, it fails to disclose certain material projections that were relied upon by Centerview in performing its valuation analyses. For example, the Registration Statement indicates that Centerview performed a Discounted Cash Flow Analysis of CB&I and McDermott by calculating the estimated present value of each company's unlevered free cash flows that CB&I and McDermott were forecasted to generate during the year ending December 31, 2018 through the year ending December 31, 2022. The Registration Statement, however, apparently fails to disclose the actual unlevered free cash flows of CB&I and McDermott that were used by Centerview in its analyses.

50. With respect to CB&I's unlevered free cash flows, the Registration Statement indicates that, in Centerview's Discounted Cash Flow Analysis, CB&I's unlevered free cash

9

flows were adjusted to exclude the cash impact of CB&I's net operating loss carryforwards ("NOLs"), but the Registration Statement appears to disclose only the unadjusted, higher set of unlevered free cash flows that were not actually used in Centerview's analysis. The Registration Statement therefore fails to (but must) disclose CB&I's projected unlevered free cash flows, as used in Centerview's analysis, for the years 2018 through 2022, as well as the Company's projected NOLs for the years 2018 through 2028.

51. With respect to McDermott's unlevered free cash flows, the Registration Statement only discloses McDermott's "free cash flows," but it fails to disclose McDermott's "*unlevered* free cash flows" that were actually used in Centerview's analysis.

52. Further, Centerview preformed an additional Discounted Cash Flow Analysis that took into account the cost and operating synergies (the "Cost Synergies") that are expected to result from the Proposed Transaction during the years 2018 through 2022, and the tax-related synergies forecasted to result from tax basis step-up associated with the sale of CB&I's technology business for the 15-year period following the Proposed Transaction (the "Tax Synergies"). The Registration Statement, however, fails to disclose the projected Cost Synergies and Tax Synergies that are expected to result from the Proposed Transaction and that Centerview used in its analysis.

53. Further, the Registration Statement discloses certain projections of CB&I for non-GAAP (generally accepted accounting principles) metrics, including Adjusted EBITDA and Unlevered Free Cash Flow, and for McDermott, including EBITDA and Free Cash Flow, but it fails to provide stockholders with the necessary line item projections for the metrics used to calculate these non-GAAP measures or otherwise reconcile the non-GAAP projections to the most comparable GAAP measures.

54. To avoid misleading stockholders with non-GAAP financial measures in business combinations such as the Proposed Transaction, publicly traded companies must provide a reconciliation of the differences between the non-GAAP financial measures with the most comparable financial measures calculated and presented in accordance with GAAP. Indeed, defendants acknowledge in the Registration Statement that "EBITDA may not be comparable to similarly titled measures in other companies' reports," and "should not be considered in isolation from, or as a substitute for, net income or cash flow measures prepared in accordance with U.S. GAAP." Further, the Registration Statement states that the free cash flow projections "should not be considered in isolation or as a substitute for cash flows from operating activities or any other measure of financial performance presented in accordance with GAAP or as a measure of a company's profitability or liquidity." As such, stockholders are entitled to the line item projections used to calculate CB&I's and McDermott's non-GAAP projections or a reconciliation of the non-GAAP projections to the most comparable GAAP measures.

55. With respect to Centerview's Selected Public Comparable Companies Analysis of each of CB&I and McDermott, the Registration Statement fails to disclose: (i) the individual multiples and financial benchmarking metrics for each of the companies observed by Centerview in its analysis; and (ii) Centerview's basis for selecting and applying different multiples reference ranges to each of CB&I's and McDermott's relevant projections.

56. With respect to Centerview's Selected Precedent Transactions Analysis, the Registration Statement fails to disclose the individual multiples and financial benchmarking metrics for each of the transactions observed by Centerview in its analysis. Further, given the fact that the mean and median observed enterprise value to CY 2017 estimated Adjusted EBITDA multiples of the selected transactions were 9.9x and 10.3x, respectively, the

11

Registration Statement must explain Centerview's basis for selecting the multiple reference range of 7.0x to 9.0x (which is wholly below the observed transactions' mean and median multiples) to apply to CB&I's CY 2017 estimated Adjusted EBITDA.

57. With respect to Centerview's Discounted Cash Flow Analysis, the Registration Statement fails to disclose: (i) CB&I's projected unlevered free cash flows for years 2018 through 2022, including both the NOL adjusted and unadjusted cash flows; (ii) McDermott's projected unlevered free cash flows for years 2018 through 2022; (iii) CB&I's projected NOLs for the years 2018 through 2028; (iv) the Cost Synergies for years 2018 through 2022 that Centerview used in its analysis; (v) the Tax Synergies for the 15-year period following the Proposed Transaction that Centerview used in its analysis; (v) the specific inputs and assumptions underlying the different sets of discount rates calculated by Centerview and applied to the free cash flows and terminal values of CB&I and McDermott, and the Cost Synergies and Tax Synergies; and (vi) the perpetuity growth rates implied by each of Centerview's analyses.

58. The omission of this material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement: (i) Opinion of CB&I's Financial Advisor; (ii) Certain Forward-Looking Financial Information Prepared by McDermott; and (iii) Certain Forward-Looking Financial Information Prepared by CD&I.

59. The Registration Statement omits material information relating to potential conflicts of interest of Centerview. Due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives, stockholders are entitled to the full disclosure of investment banker compensation and all potential conflicts of interest.

60. The Registration Statement states that, "[i]n the two years prior to the date of its written opinion, Centerview was engaged to provide certain financial advisory services to CB&I, including strategic advisory services, and Centerview received compensation from CB&I for such services." The Registration Statement, however, fails to disclose the terms of Centerview's past strategic advisory services to CB&I, including the amount of compensation that Centerview has earned in connection with those services.

61. The omission of this material information renders the Registration Statement false and misleading, including, inter alia, the following sections of the Registration Statement: (i) Opinion of CB&I's Financial Advisor; and (ii) Background of the Combination.

62. The Registration Statement omits material information relating to the background leading to the Proposed Transaction. CB&I's stockholders are entitled to an accurate description of the process the directors used in coming to their decision to support the Proposed Transaction.

63. The Registration Statement indicates that CB&I entered into confidentiality agreements with "more than 30 potentially interested parties, including both strategic and financial buyers." The Registration Statement, however, fails to disclose the terms of the confidentiality agreements, including whether they contain standstill and/or "don't ask, don't waive" provisions that prohibit the counterparties from making an unsolicited superior proposal to CB&I. Notably, it is likely that such provisions do exist because the Merger Agreement provides that CB&I and its affiliates shall "not grant any waiver or release under or knowingly fail to enforce any confidentiality, standstill or similar agreement entered into or amended during the 12 months immediately preceding the date of this Agreement in respect of a proposed Comet Acquisition Proposal." This information is particularly important to stockholders, because several parties other than McDermott submitted offers for a transaction with CB&I.

64. Relatedly, the Registration Statement fails to disclose the actual economic and other terms proposed by each of the companies that submitted proposals to engage in a transaction with CB&I. Specifically, the Registration Statement indicates that, on September 27, 2017, CB&I received proposals from eight potential buyers of CB&I's technology business, and on November 20, 2017, CB&I received three final proposals for a transaction with the Company. The Registration Statement, however, fails to disclose the details of each of those proposals. CB&I's stockholders are entitled to understand what offers were made to and rejected by CB&I so that they can assess for themselves whether the Proposed Transaction with McDermott is the best transaction possible.

65. The omission of this material information renders the Background of the Combination section of the Registration Statement false and misleading.

66. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to CB&I's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Chicago Bridge

67. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

68. The Individual Defendants disseminated the false and misleading Registration Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Chicago Bridge is liable as the issuer of these statements.

69. The Registration Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within Chicago Bridge, the Individual

Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

70. The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

71. The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Registration Statement and in other information reasonably available to stockholders.

72. The Registration Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

73. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

74. Because of the false and misleading statements in the Registration Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and McDermott International

75. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

76. The Individual Defendants and McDermott International acted as controlling persons of Chicago Bridge within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Chicago Bridge and participation in and/or awareness of Chicago Bridge's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and

15

control and did influence and control, directly or indirectly, the decision making of Chicago Bridge, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

77. Each of the Individual Defendants and McDermott International was provided with or had unlimited access to copies of the Registration Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

78. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Chicago Bridge, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Registration Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly in the making of the Registration Statement.

79. McDermott International also had direct supervisory control over the composition of the Registration Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Registration Statement.

80. By virtue of the foregoing, the Individual Defendants and McDermott International violated Section 20(a) of the 1934 Act.

81. As set forth above, the Individual Defendants and McDermott International had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the

Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: February 2, 2018       **KENDALL LAW GROUP, PLLC**

By: */s/ Joe Kendall*
Joe Kendall (Texas Bar No. 11260700)
jkendall@kendalllawgroup.com
Jamie J. McKey (Texas Bar No. 24045262)
jmckey@kendalllawgroup.com
3232 McKinney Avenue, Suite 700
Dallas, TX 75204
Telephone: (214) 744-3000
Facsimile: (214) 744-3015
*Attorneys for Plaintiff*

**OF COUNSEL:**

**RIGRODSKY & LONG, P.A.**
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone:  (302) 295-5310
Facsimile:  (302) 654-7530

**RM LAW, P.C.**
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Telephone:  (484) 324-6800
Facsimile:  (484) 631-1305